## REMELY v. KUNTZ.

*Defendant appealed from an award, and the plaintiff obtained a verdict for a less sum than the award: he is entitled to full costs.*

IN error from the Common Pleas of Carbon.

*March* 20. In November, 1845, the plaintiff entered a rule of reference, and obtained an award for $132. The defendant appealed, and the plaintiff obtained a verdict for $129. The court entered judgment without costs accrued since the appeal.

*Wheeler*, for plaintiff in error.—The acts of 1842 and 1845 repealed the act of 1810, so far as respects the present question, and leaves the unsuccessful party liable, generally, for costs: 7 Barr, 125.

*Porter*, contrà.—The act of 1845 merely declares, that security shall be given for the costs, which may be legally recovered. This in no way determines what are the legal liabilities; but leaves them under the provisions of the former acts.

*April* 2. BELL, J.—Our acts of 1810 and 1836, introducing and extending the remedy by compulsory arbitration, were intended to supply a system of costs, in cases of appeals from awards of arbitrators, and operated as a repeal of the statute of Gloucester, wherever their provisions were applicable.

But the right to recover, or the liability to pay costs, was made to depend on the form of the recognisance, which the party appealing from an award was required to acknowledge. The prescribed conditions of these securities were intended to be commensurate with the whole amount of costs the adverse party could recover, under the events contemplated by the condition. This was, however, found to be of limited effect; and, therefore, where the terms of the condition failed of application to the circumstances of the particular case, it was left to be governed by the law, as this stood prior to the enactment of the arbitration acts. But, under the events provided for, it worked, by necessary implication, an exoneration from payment of costs, where its condition remained unforfeited by the facts occurring subsequent to the appeal. Such is the doctrine of Landis *v.* Schaffer, 4 S. & R. 196, Poke *v.* Kelly, 13 S. & R. 165, and other kindred cases, by which it was settled, that, where the recognisance stipulated the payment of costs in a particular event, the appellant was not bound to pay costs, if that

event failed to happen. Thus it was held, a defendant appellant was not bound to pay costs if the plaintiff recovered less than the amount of the award, for the recognisance, on appeal, stipulated such an obligation only in case the plaintiff should recover a verdict as, or more favourable than the award; but, as it was not made incumbent on the plaintiff to pay costs to the appellant, each party was left to bear the burden of his own costs, accruing subsequently to the appeal. So, too, if the plaintiff appealed, and recovered a judgment for less than the award, he was not entitled to recover the accruing costs; for, by the terms of his recognisance, he was bound to pay costs, and his rights, as well as liabilities in respect to costs, were ascertained by that instrument: Comth. *v.* Shannon, 13 S. & R. 109; Rees *v.* Fisler, 5 Penna. L. J. 137. On the other hand, many cases established the rule, that, where the terms of the recognisance were inapplicable under the circumstances of the particular case, the arbitration acts had no influence in determining the question of costs. Thus, a plaintiff who appealed from an award made in favour of the defendant, and recovered a verdict, or who appealed from an award in his own favour, and obtained a greater sum than the award, was entitled to recover the costs paid by him on entering his appeal, as well as those afterwards accruing. The former was the case in Comth. *v.* Shannon; and C. J. Tilghman, after reciting the form of the recognisance of a plaintiff appellant, observed, " There are no other provisions in this act mentioning particularly in what event of the suit the appellant shall be entitled to recover costs; so that we must recur to general principles, and, according to them, the plaintiff having obtained a verdict for $143.33, would certainly be entitled to costs. It would seem, therefore, to be the intent of the law, that, in such case, the plaintiff should recover the costs he paid on the entry of his appeal." It was added, the same would be the result of an appeal, by plaintiff, from an award in his own favour, and a subsequent recovery of a larger amount; and this very point was afterwards decided in Haines *v.* Moorhead, 2 Barr, 65. The like rule obtained, and for the like reason, in appeals by defendants. If the plaintiff recovered a final judgment, though less favourable than the award, the appellant was not entitled to a return of the costs paid on the appeal, for the reason, it must be, that according to the terms of his recognisance, though exempted from the payment of costs subsequent to the appeal, he was not entitled to recover such costs from his adversary: Pratt *v.* Naglee, 6 S. & R. 299; Bellas *v.* Oyster, 7 W. 341. But, if the defendant obtained a general

Q

verdict in his favour, he was entitled to the costs which follow a final judgment. This was the case of Gallatin v. Cornman, 1 Penna. 115; and it was decided, the appellant was entitled to full costs, under the law as it existed prior to the arbitration acts. It was observed, that the 14th sec. of the act of 1810, which gave the defendants' recognisance, only looked to the case of a reduced judgment to be recovered by the plaintiff. It did not provide for the case of a verdict obtained by the defendant appellant. Such a case, therefore, was not provided for, and was, consequently, left to be governed by the law as it stood before the arbitration act, by which costs follow the final judgment. Penrose v. Pawling, 8 W. & S. 384, and the very recent case of Addison v. Hampson, 6 Barr, 463, is to the same effect.

These authorities, and others that might be added, very clearly show that the rights and liabilities of litigants, as to costs, were, under the acts of 1810 and 1836, altogether dependent on the conditions of the recognisances prescribed by the statutes, when these were shaped to meet existing facts; but if inapplicable, or otherwise inoperative, there was casus omissus, and the parties were necessarily thrown back upon the general law of costs as the arbiter between them. Such was the settled rule when, in 1842, the law abolishing imprisonment for debt was passed. One effect of the law was to strike from our system the recognisance of special bail, as inconsistent with the leading design of the abolishing act, and, consequently, it operated to repeal that portion of the act of 1836 which stipulated for such recognisances on appeals from awards. It was, accordingly, determined in Beers v. The West Branch Bank, 7 W. & S. 365, that such appeals were good without bail or recognisance of any kind. Shortly after, it was decided in Merrit v. Smith, 2 Barr, 161, that the act of the 20th of March, 1845, did not interfere with that provision of the act of 1836, requiring payment, on appeal, of all costs due in the action, up to that time. The latter statute provides that, in lieu of the bail theretofore required, on appeals from the judgments of justices and awards of arbitrators, the bail shall be absolute in double the probable amount of the costs, accrued or likely to accrue, with one or more sureties, "conditioned for the payment of all costs accrued or that may be legally recovered in such cases against the appellants." The effect of this enactment, as was held in Shuff v. Morgan, 7 Barr, 125, is to supersede those sections of the act of 1836, which prescribed the form of recognisances on appeal, and a recognisance taken under the earlier statute was, therefore, declared void,

as being repugnant to and unauthorized by the late act. It was acknowledged by a plaintiff appellant, after the act of 1845, and was conditioned that the plaintiff, in the event of a judgment for the defendant, would pay all costs, "with one dollar for each and every day that shall be lost by the said defendant in attending to such appeal." The Chief Justice, after reciting the provisions of the act of 1845, remarked, there is "not a word in this about payment of a daily allowance for prosecuting or defending the suit. In order to obtain his appeal, the plaintiff was driven to harder terms than the law allowed to be exacted, and the recognisance was void." The discrimination made by these cases, very clearly points to the distinction existing in the act of 1836, itself, between costs due and which were to be paid by express direction, independently of the stipulations of the recognisance, and costs to grow due, which were to be secured by the recognisance. The first provision was not interfered with, and, therefore, remained obligatory; the last was superseded, and, therefore, the subsequently accruing costs are no longer under the dominion of its terms. Thus the question stands upon express authority. But apart from this, the deductions of sound reason lead to the same conclusion. The argument may be thus stated : By the statute of Gloucester, costs unvaryingly followed a recovery of debt or damages. But our arbitration acts, by force of the conditions of certain recognisances prescribed by them, suspended the rule of the English statute in certain cases. These recognisances were, however, afterwards stricken from the arbitration system, by the act of 1842, and the vacancy thus created was supplied by the act of 1845. During the period between 1842 and 1845 there can be no doubt the rule of the statute of Gloucester was revived. Was it again repealed by the act of 1845 ? This effect could only be produced by reviving the old form of recognisance, or something similar to it. But the legislature sedulously avoided every apt expression of an intent to effect such a revival. The condition of the absolute recognisance, directed by the last statute, is for the payment of all costs that may be legally recovered in such cases against the appellant. At the time of this enactment, the recognisance of 1836 was, as we have seen, obliterated by the legal effect of the act of 1842, and the rule indicative of the costs "that might be legally recovered in such cases" was to be derived from the English statute, except where that was interfered with by existing special enactments of our own, as, for instance, the $100 law. It must be presumed the law-makers were aware of this. Had they designed to restore the

old recognisance, it is impossible to believe they would not have manifested it by the employment of language proper for the purpose. The only safe conclusion that can be drawn from their omission to do so, is, that they intended not only to engraft upon bail on appeals a new quality, but to affix to it a new condition. This new condition leaves the costs of the action to follow the final event. Whether this will prove an improvement, time must determine. It is enough for us that such we find to be the law. It may be worthy of consideration whether a provision similar to that of the act of April 9, 1833, regulating costs on appeals from the judgments of justices of the peace, might not be profitably introduced into our arbitration system. Without some such guard against cupidity on the one hand, and craft on the other, it may often be difficult to prevent injustice.

What has been said shows the present plaintiff is entitled to recover the legal costs of his action. The Court of Common Pleas having refused to permit this, fell into error.

> Judgment reversed, and it is ordered that judgment be entered for the plaintiff upon the verdict, with full costs.